# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS BENTON SEVERNS,<br><br>Defendant. | Cause No. CR 24-89-GF-BMM<br><br><br>**ORDER ON DEFENDANT'S MOTION TO SUPPRESS** |

## INTRODUCTION

A grand jury indicted Nicolas Benton Severns ("Severns") with one count of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 and one count of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.) Severns seeks to suppress the evidence obtained after an allegedly illegal stop and arrest by the Blackfeet Law Enforcement Services ("BLES"). (Doc. 22.) The Government opposes. (Doc. 30.) The Court held a hearing on May 20, 2025. (Doc. 36.)

## BACKGROUND

### I.    Traffic Stop

BLES Officer Officer Wild Gun ("Officer Officer Wild Gun") conducted a

1

traffic stop for a speeding violation in Browning on the Blackfeet Indian Reservation. (Doc. 25-1 at 1.) Officer Officer Wild Gun had been observing a "well known drug house" in Browning before conducting the stop. Officer Officer Wild Gun recognized the car as one that other BLES officers had observed frequently at the alleged drug house. (*Id.*) Officer Wild Gun approached the car and saw Washington state license plates on the car. (*Id.*) Officer Wild Gun identified the driver as Jacob Eckelkamp ("Eckelkamp") and the passenger as Severns. (*Id.*)

Eckelkamp informed the officers that the car was a rental. (Def. Ex. #2.) Officers asked Eckelkamp for a valid drivers license and registration. (*Id.*) Eckelkamp responded that he did not have a drivers license or registration and was unsure whether there was insurance on the car. (Doc. 25-1.) Officer Wild Gun and other assisting officers called Blackfeet Dispatch ("Dispatch") to verify if Eckelkamp had an active warrant, and whether he had a valid driver's license, car insurance and registration. (*Id.*) Dispatch informed Officer Wild Gun that Eckelkamp had an invalid license, unconfirmed insurance, but that the rental car was properly registered. (*Id.*) Dispatch also informed Officer Wild Gun that Eckelkamp had an active warrant for his arrest from Washington. (*Id*; Doc. 30-1.) Officer Wild Gun also learned that Severns had rented the car in his name, but lacked a valid drivers license.

Officer Wild Gun further investigated Eckelkamp and Severns. BLES

2

dispatch records indicate that three officers arrived at the scene of the stop within three minutes of reporting the alleged speeding violation committed by Eckelkamp. (Doc. 30-1 at 5.) BLES officers requested support from Glacier County deputies approximately 15 minutes after the speeding violation due to the inability of the BLES officers to issue a speeding ticket to non-tribal members. (*Id.*)

Officer Wild Gun advised Eckelkamp that another BLES Officer, Officer Skunkcap ("Officer Skunkcap"), was going to perform a dog sniff around the car. Officer Skunkcap approached the car and explained BLES jurisdiction to Eckelkamp and that Eckelkamp would have to go to court in Glacier County should he receive a speeding ticket. (Def. Ex. #2 at 1:11.) Officer Skunkcap asked if there is anything illegal in the car. (*Id.* at 1:25) Eckelkamp replied "no, not that I know of" (*Id.* at 1:29.) Officer Skunkcap requested that Eckelkamp and Severns "step out and hang out with another officer." (*Id.* at 1:40.) Eckelkamp and Severns exited the car. (*Id.* at 1:50-2:30.)

Officer Wild Gun and Officer Skunkcap conducted a body search of Eckelkamp and Severns for officer safety. (*Id.* at 2:36.) Eckelkamp advised Officer Skunkcap that "[he] might possibly have a knife on [him] or something, but [he doesn't believe he does]" (*Id.* at 2:35.) Officer Skunkcap noticed aluminum foil sticking from Eckelkamp's pocket. (*Id.* at 2:45.) Officer Skunkcap asked Eckelkamp about the aluminum foil. Eckelkamp responded "just smokin tobacco and stuff." (*Id.*

3

at 2:55.) Officer Skunkcap responded that "it is not his first day on the job." (*Id.* at 2:57.) Officer Skunkcap put Eckelkamp in handcuffs and continued his investigation. (*Id.* at 3:30.) Officer Skunkcap continued to search Eckelkamp's person, including his pockets, and found a clear bag potentially containing methamphetamine. (*Id.* at 2:45-4:00.) Officer Skunkcap and Officer Wild Gun secured Eckelkamp and Severns in their respective police cars while the officers continued their investigation. (*Id.*) Officer Wild Gun next found what appeared to be burnt fentanyl pills in a rubber container on Severns's person. (Doc. 25-1.)

Officer Skunkcap's drug dog alerted on the passenger side of the car for possible drugs at approximately 23 minutes after the initial speeding violation, and approximately 15 minutes after Officer Wild Gun's first encounter with Eckelkamp and Severns. (*Id.*; Doc. 30-1 at 5.) Officer Wild Gun requested that the rental car be towed as both Eckelkamp and Severns lacked a valid drivers license. (Doc. 30-1 at 5-6.) BLES officers later confirmed that the substances found in the rental car were methamphetamine and fentanyl. (Doc. 25-1 at 2.)

## LEGAL STANDARD

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "[A] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014); *Delaware v.*

4

*Prouse*, 440 U.S. 648, 653 (1979). A seizure that begins lawfully may violate the Fourth Amendment "if its manner or execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

A defendant has the ultimate burden of proof on a Fourth Amendment motion to suppress. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). The Government has the burden of providing "specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct" to justify reasonable suspicion. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000); *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

An initially legal traffic stop may become illegal if inquiries into matters unrelated to the justification for the stop unreasonably prolong it. *United States v. Turvin*, 517 F.3d 1097, 1103-04 (9th Cir. 2008). Officers may ask questions unrelated to the purpose of the stop as long as officers do not unreasonably extended the stop. *United States v. Mendez*, 476 F.3d 1077, 1081 (9th Cir. 2007). "The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate the purpose."

## ANALYSIS

## I.  BLES officers did not extend the stop.

Severns contends that BLES officers lacked reasonable suspicion to justify extending a traffic stop for a speeding violation into an investigation for drugs. (Doc. 25 at 7.) The Government argues that the time it took to verify Ekelkamp's and Severn's personal and driving information did not extend the stop. (Doc. 30 at 11.)

A stop is "unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a [ticket]." *Rodriguez v. United States*, 575 U.S. 348, 349 (2015). (alterations omitted) (internal citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. The U.S. Supreme Court concluded that the officers in *Rodriguez* unreasonably extended a traffic stop when they had issued a written warning and waited 7-8 minutes before conducting a dog sniff. The U.S. Supreme Court reiterated that stops that are "prolonged beyond" the "time reasonable required to complete the stop's mission" are "unlawful." *Id.* at 357. (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)) (internal quotations omitted).

Officer Wild Gun stopped Eckelkamp and Severns after the police radar indicated that Eckelkamp was travelling 33 miles per hour in a 25 mile per hour zone. Officer Wild Gun performed the routine checks after initiating the stop for valid license, registration, insurance, and for any outstanding warrants. *See Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 658–659 (1979)). The "mission" of the

initial traffic stop was to issue a speeding ticket. *See Rodriguez* at 354.

Officer Skunkcap and another BLES officer were at the scene of the stop within minutes of Officer Wild Gun exiting his police car. (Doc. 30-1.) Officer Wild Gun wasted no time and relied on other BLES officers to verify the information that Ecklekamp and Severns provided. Officer Wild Gun learned through his investigation that Ecklekamp and Severns were out of state residents. Officer Wild Gun further recognized that he would need to alert Glacier County deputies to continue the stop. BLES officers called Glacier County deputies approximately 15 minutes into the stop. (*Id*; *See i.e. United States v. Cooley,* 593 U.S. 345, *354* (2021) (holding tribal police may detain and search a non-tribal motorist that is suspected to be in violation of federal or state law, and for a reasonable period of time for a non-tribal officer to arrive). It took BLES Dispatch approximately 20 minutes to verify Ecklekamp's and Severns's information and to inform BLES officers that there was an outstanding warrant existed for Ecklekamp's arrest from the State of Washington. (*Id*.) It is reasonable that it took extra time to check licenses for out of state resident's and for any outstanding warrants. After BLES officers learned that Ecklekamp and Severns lacked the required valid drivers to operate a vehicle they appropriately detained Ecklekamp and Severns.

The Court recognizes that traffic stops on Indian reservations inevitably take longer due to the complexities of police power on reservations and the need to alert

7

non-tribal police officers to issue traffic infractions to non-tribal members. BLES officers first notified Severns that they could not issue a speeding ticket and that BLES officers would need to alert Glacier County deputies to decide whether to issue a ticket. (Def. Ex. #2 at 1:11.) In examining whether the BLES officers "diligently" pursued the investigation into Severns and Eckelkamp, the Court finds that the BLES officers acted reasonably given the circumstances of the stop. *See Rodriguez* at 355.

BLES officers learned that neither of the car's occupants possessed a valid drivers' licenses. BLES officers were also unaware if the occupants possessed dangerous weapons. BLES officers expeditiously submitted to BLES Dispatch the limited information they had on each occupant. The fact that both the driver and passenger lived in Washington likely extended the delay in verifying the validity of their information. BLES officers ordered the occupants out of the vehicle during the investigation to search their persons for any potential dangerous weapons. Officer Skunkcap notices a piece of tinfoil sticking out from Eckelkamps pocket almost immediately after Officer Skunkcap requested Eckelkamp to get out of the car. (Def. Ex. #2 at 2:45.)

**II.     BLES officers had adequate reasonable suspicion that drugs were present appropriately detained Eckelkamp and Severns.**

Officer Skunkcap independently formed reasonable suspicion of a drug crime

when he plainly observed tin foil in Eckelkamp's pocket subsequent to a pat down search. *See United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019) (a traffic stop may be extended to conduct an investigation into matters other than the original traffic violation so long as the officers have reasonable suspicion of an independent offense). "Absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 348 (2015).

BLES officers detained Eckelkamp and Severns once they learned of possible evidence indicating the presence of drugs in the car. BLES officer Officer Skunkcap used his drug dog to search the outside of the car. The dog alerted near the passenger side where Severns was sitting. BLES officers formed the requisite probable cause to arrest Eckelkamp and Severns for drug possession. *See Florida. v. Harris*, 568 U.S. 237, 247 (2013) (allowing a court to presume that a dog's alerts provides probable cause to search, absent any other conflicting evidence). For those reasons, Severns's motion to suppress should be denied.

Accordingly, **IT IS HEREBY ORDERED** that Severns's Motion to Suppress (Doc. 22.) is **DENIED** in accordance with the above order**.**

**DATED** this 11th day of June 2025.

_____
Brian Morris, Chief District Judge
United States District Court